UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - -    x

DOV FERSHTADT,                    :

                                 :      07 Civ. 6963

              Plaintiff,         :

                                   :

    -against-                   :

                                   :

VERIZON COMMUNICATIONS INC., :
THE PLAN FOR GROUP           :
INSURANCE, METROPOLITAN LIFE :
INSURANCE COMPANY, and UNUM :
LIFE INSURANCE COMPANY OF    :
AMERICA,                          :

                                   :

             Defendants.       :

- - - - - - - - - - - - - - - - - - - - - - - -    x

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO THE
MOTION TO DISMISS**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

COUNTER-STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    I       DOV'S THIRD CAUSE OF ACTION FOR BAD FAITH IS NOT
            PREEMPTED BY ERISA . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

    II     DOV'S FOURTH CAUSE OF ACTION STATES A CLAIM . . . . . . . . . 16

    III    DEFENDANTS' FAILURE TO INCLUDE DOV IN THE PROPER
            PLAN AND MAINTAIN HIS PENSION BENEFITS CONSTITUTES
            BREACH OF A FIDUCIARY DUTY AND WARRANTS
            EQUITABLE RESTITUTION AMONG OTHER REMEDIES . . . . . . . 16

    IV    DOV IS ENTITLED TO A JURY TRIAL . . . . . . . . . . . . . . . . . . . . . . . . 21

    V     TO THE EXTENT THAT THE COURT IS DISPOSED TO FIND
            THAT TECHNICAL DEFICIENCIES RENDER DOV'S CLAIMS
            FACIALLY DEFICIENT, DOV IS ENTITLED TO REPLEAD . . . . . . . 22

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

## PRELIMINARY STATEMENT

By this action, plaintiff, Dov Fershtadt, ("Dov"), seeks multifaceted relief under, inter alia, the Employment Retirement Income Security Act ("ERISA") from Verizon Communications, Inc., ("Verizon"), the Plan for Group Insurance, (the "PGI"), Metropolitan Life Insurance Company, ("MetLife"), and Unum Life Insurance Company of America, ("Unum") (collectively, "defendants"). Dov alleges, inter alia, that defendants: (i) failed to pay disability benefits properly due him; (ii) breached their fiduciary duties to Dov in failing to apprise him of certain enrollment options available to him and other similarly-situated plan participants and beneficiaries; and (iii) conversion of certain pension monies to which Dov was rightfully entitled.

By their motion, Verizon and PGI ("Verizon Defendants") seek to dismiss, apparently on behalf of all defendants, Dov's second, third and fourth causes of action. As demonstrated below, defendants have misapprehended the nature of Dov's claims and the law governing them. The motion to dismiss should be denied in all respects.

## COUNTER-STATEMENT OF FACTS[1]

### Dov's Employment with Verizon, Enrollment in its Plans and Disability

In 1982, Dov became an employee of a company which later became Verizon (Amended Complaint, ¶15). On September 11, 2001, while Dov was working for Verizon

---

[1] The Statement of Facts contained in the brief submitted by Verizon and the PGI does not fully and accurately recite the allegations of the Amended Complaint and/or what actually transpired prior to its submission to the Court. Accordingly, Dov submits this Counter-Statement of Facts.

at the World Trade Center ("WTC"), a group of terrorists known as al Qaeda attacked the WTC and several other targets in the United States, resulting in the collapse of the Twin Towers and deaths of several thousand Americans (Id. ¶¶17-19). As a consequence of these tragic events, Dov ultimately developed a series of severe medical conditions, including Dementia, Post-Traumatic Stress Disorder and Depression ("Disabling Conditions"), rendering him disabled (Id. ¶¶29, 32-34).

At the time of the 9/11 attacks, Dov was covered by a disability plan entitled "Bell Atlantic Long Term Disability Plan for Management Employees" (the "Bell Atlantic Plan") issued through Dov's employer (Id. ¶¶5, 30). The Bell Atlantic Plan contained multiple provisions including:

- disability benefits payable to Dov at 50% of his pre-disability earnings, fully taxable, and subject to an annual maximum of $420,000 ("$420,000 Cap") (Id. ¶31); and

- if Dov became disabled for more than 52 weeks, his employment may be terminated and he may not continue to accrue pension benefits to which he was otherwise entitled to (Id. ¶48).

Verizon and its administrator at the time, Unum, initially approved payment of short-term and later, long-term, disability benefits to Dov, but, as discussed in greater detail below, repeatedly misidentified the plan applicable to him, at times, mixing and matching various provisions from different plans and, at other times, seemingly changing the applicable plan and plan provisions to be applied to his claim depending upon which provisions were less favorable to him. For example, Verizon deemed his Disabling Conditions to constitute a

3

mental-nervous disability, the limit of liability for which, according to defendants, was 24 months (Id. ¶¶71-72); however, the Bell Atlantic Plan contained no liability limitation for mental-nervous conditions. Rather, a mental-nervous limitation appears in a 2004 Summary Plan Description ("2004 SPD") for the PGI (Id. ¶72). Thus, defendants were combining the Bell Atlantic Plan and PGI/2004 SPD. Similarly, for 12 months, Verizon paid Dov's benefits as fully taxable, and subject to the $420,000 Cap applicable under the Bell Atlantic Plan (Id. ¶68); however, after expiration of the aforesaid 12-month period, Verizon paid Dov benefits based upon a lower, $8,333 Cap (hereinafter defined) contained in a provision of the 2004 SPD (Id. ¶75) which, as discussed hereafter, contains a provision which indicates that benefits paid thereunder are payable tax free (Id. ¶46).

**Verizon Selectively Excludes Dov from an Option Available
to Other Participants in the Bell Atlantic Plan**

In October 2001, Verizon had issued an offer to its employees (other than Dov) covered under the Bell Atlantic Plan (other than Dov) to give them the option of changing their benefit levels from those offered under the Bell Atlantic Plan to those to be offered under the PGI, or to leave the aforesaid levels the same (the "October 2001 Transfer Option") (Id. ¶¶37-38). Unfortunately, Verizon never sent the October 2001 Transfer Option to Dov and he never received it (Id. ¶¶39-41).

**The 2004 SPD**

Sometime during 2004, Verizon issued the 2004 SPD in connection with the PGI (Id. ¶44). The 2004 SPD contains multiple provisions including:

- a limitation of liability, by which persons who became disabled as a result of mental-nervous conditions ("Mental-Nervous Limitation") were restricted to 24 months of disability insurance benefits (Id. ¶72);

- a clause stating that Verizon employees who did not avail themselves with the October 2001 Transfer Option would continue maintaining whatever benefit levels they were entitled to receive under the Bell Atlantic Plan (Id. ¶45); and

- a clause stating that disability benefits received thereunder were to be non-taxable, subject to an $8,333 monthly cap ("$8,333 Cap"), and in the event a plan participant becomes disabled for more than 52 weeks, their employment would not necessarily terminate and he or she would continue to accrue pension benefits ("Continuing Accrual/Non-Termination Provision") (Id. ¶¶46-47).

## Verizon Directs Dov to Enroll in the PGI, under the Auspices of yet Another New SPD

In October 2004, Verizon directed Dov to enroll in the PGI and select various benefits levels and corresponding taxability options (the "Verizon Directive") available to Verizon employees in connection with yet another a new Summary Plan Description to be issued -- this time, in 2005 ("2005 SPD") (Id. ¶¶41, 50). Pursuant to the Verizon Directive, Dov selected a benefits level of 66% of his predisability earnings, non-taxable, and capped at $11,111 per month ("$11,111 Cap") (collectively, the benefits at this level are hereinafter referred to as "Full Benefits Levels") (Id. ¶52). Verizon provided multiple confirmations ("Verizon's Confirmations") to Dov that he would be paid his long-term disability benefits at Full Benefits Levels (Id. ¶¶55, 62). In reliance upon the Verizon's Confirmations, Dov paid, and Verizon accepted, premiums attached to his benefits selection, with after tax earnings (Id. ¶¶56-57).

**<u>Verizon Continues to Conflate and Confuse Dov's Coverages</u>**

At this time, Dov had already been receiving short-term disability benefits which continued until on or around July, 2005 (<u>Id</u>. ¶¶60-61). However, on or about July 14, 2005, Dov received a letter from Unum (the "July 14th Letter"), indicating that he would start receiving long-term disability ("LTD") benefits under yet another plan -- this one, a plan called the "Legacy Plan," which, according to Verizon and Unum, entitled Dov to 50% of his pre-disability earnings, fully taxable -- a sharp contrast to the tax-free benefits at 66% that he selected under the Verizon Directive and the assurances that Dov and his wife repeatedly received concerning his actual selection (<u>Id</u>. ¶63). Dov never received a copy of this "Legacy Plan" and is entirely unfamiliar with its terms (<u>Id</u>. ¶64).

On August 3, 2005, Verizon sent Dov a letter (the "August 3rd Letter"), confirming Dov's entitlement to LTD payments at Full Benefits Levels, consistent with the Verizon Directive and Confirmation, which indicated that his claim would be administered under the <u>2005</u> SPD and contradicting Unum's July 14th Letter. (<u>Id</u>. ¶¶65-66). Days later, Verizon inexplicably terminated Dov's employment (<u>Id</u>. ¶67), as if he were still covered under the Bell Atlantic Plan and not covered by the PGI and 2005 SPD.

Upon Dov's termination, Dov's pension benefits ceased to accrue. And following Dov's termination, Dov received LTD benefits at 50%, fully taxable, and subject to the $420,000 Cap from the Bell Atlantic Plan (<u>Id</u>. ¶68).

**<u>Verizon Wrongfully Terminates Dov's LTD Benefits Altogether</u>**

Making matters worse, in or about August 2006, Verizon, Unum and/or MetLife terminated Dov's LTD benefits altogether (the "August 2006 Termination"), citing the 2004 SPD (Id. ¶71). The basis for the August 2006 Termination was the Mental-Nervous Limitation (Id. ¶¶71-72).

## Verizon and Metlife Reinstate Dov's Benefits, but at Different and Confusing Levels

In September 2006, Dov successfully appealed the August 2006 Termination and thereafter, continued to receive LTD benefits going forward (Id. ¶¶73-75); however, Verizon and its new administrator, MetLife, suddenly began paying him LTD benefits based upon the $8,333 Cap contained in the 2004 SPD (not the $420,000 Cap as they had done previously), and made the benefits fully taxable even though the 2004 SPD states that benefits paid thereunder are not taxable ("September Determination") (Id. ¶75). Thus, defendants appeared to be administering Dov's LTD benefits as if he were covered by the provisions least favorable to him under two different plans.

Dov appealed the September Determination in November 2006, and demanded copies of certain tape-recorded conversations ("Tape Recordings") that Verizon and/or MetLife engaged in with Dov, and which Dov believes contain admissions by Verizon and its representatives concerning Dov's entitlement to benefits (Id. ¶¶78-79, 90). In response, Verizon denied Dov's appeal, mischaracterized it as a request for "additional benefits," further decided that Dov was covered under the 2004 SPD ("Verizon's Denial"), and ignored Dov's request for the Tape Recordings (Id. ¶¶81-82). Dov immediately sought copies of the

7

administrative record detailing the circumstances surrounding Verizon's Denial and again, demanded <u>inter alia</u>, copies of the Tape Recordings. (<u>Id</u>. ¶¶83-84). To date, Verizon and MetLife refuse to produce the Tape Recordings and have produced the administrative record, but with pertinent names and other important information redacted (<u>Id</u>. ¶¶85-86).

In April, 2007, Dov appealed Verizon's Denial and demanded that his LTD Benefits be administered and paid pursuant to the 2005 SPD, retroactively, currently and prospectively, at Full Benefits levels (<u>Id</u>. ¶88). Dov also reiterated his request for the Tape Recordings (<u>Id</u>. ¶89). Verizon and MetLife failed to respond to this appeal, which, under the terms of the 2004 and 2005 SPDs, constitutes a rejection of the same ("De Facto Rejection") (<u>Id</u>. ¶95). This lawsuit ensued.

## Verizon Purports to Grant Dov's Appeal in Part After Commencement of this Action

Shortly after Dov filed this action, Verizon purported to grant Dov's appeal in part, ostensibly recognizing that its payment of Dov's LTD benefits under the auspices of multiple plans, according him the least favorable provisions of each, was legally and morally indefensible. Currently, Dov receives 50% of his pre-disability earnings, subject to the $420,000 Cap, fully taxable.

## STANDARD OF REVIEW

It is well-settled that, on motions to dismiss for failure to state a cause of action, courts are required to deem the allegations contained in the complaint true.[2] Accordingly,

---

[2]<u>Kassner v. 2d Ave. Delicatessen</u>, 496 F.3d 229, 238 (2d Cir. 2007) ("court is to accept as true all facts alleged in the complaint"); <u>Grandon v. Merrill Lynch & Co.</u>, 147 F.3d 184, 188 (2d Cir. 1998) ("in

8

complaints must be "liberally construed," with all reasonable inferences drawn favor of the non-moving party.[3]

"The court's function on a motion to dismiss is not to weigh the evidence that might be presented at trial, but merely to determine whether the complaint itself is legally sufficient."[4] Therefore, the Verizon Defendants' motion should not be granted unless the plaintiff cannot prove <u>any facts</u> in support of their claim, which entitles them to relief.[5] As shown below, Dov's allegations state claims for relief with respect to the causes of action that the Verizon Defendants seek to dismiss.

## ARGUMENT

## I

## DOV'S THIRD CAUSE OF ACTION FOR BAD FAITH IS NOT PREEMPTED BY ERISA

Under ERISA, certain state law claims are saved from preemption.[6] Specifically:

---

reviewing such a dismissal [for failure to state a claim], we accept as true the factual allegations made in the complaint").

[3]<u>Id.</u>; <u>also see</u> <u>Frommert v. Conkright</u>, 433 F.3d 254, 262 (2d Cir. 2006) (in reviewing the grant of a motion to dismiss, courts "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the plaintiff").

[4]<u>Goldman v. Belden</u>, 754 F.2d 1059, 1067 (2d Cir. 1985) (citations omitted).

[5]<u>Id.</u>, at 1065 (emphasis added); <u>also see</u> <u>Laborers Local 17 Health and Benefit Fund v. Philip Morris, Inc.</u>, 191 F.3d 229, 234 (2d Cir. 1999) ("dismissal is proper only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations"); <u>Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.</u>, 748 F.2d 774, 779 (2d Cir.1984) ("[t]he district court should deny the motion [to dismiss] unless it appears to a certainty that a plaintiff can prove no set of facts entitling him to relief").

[6]<u>E.g.</u>, <u>Metropolitan Life Ins. Co. v. Massachusetts</u>, 471 U.S. 724, 741 (1985); <u>Franklin H. Williams Ins. Trust v. Travelers Ins. Co.</u>, 50 F.3d 144, 148 (2d Cir. 1995)

> . . . Except as provided in subparagraph (B) [the deemer clause][7], nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities.

29 U.S.C. §1144; also see, Metropolitan Life, 471 U.S. at 740. (recognizing that state laws that "regulate insurance" are saved from preemption under ERISA); Unum Life Ins. Co. of America v. Ward, 526 U.S. 358, 366-7 (1999) (accord); Franklin H. Williams, 50 F.3d at 148 (accord). Here, as discussed in greater detail infra, defendants' conduct is expressly prohibited under New York decisional law, Acquista v. New York Life Ins. Co., 285 A.D.2d 73, 730 N.Y.S.2d 272 (1st Dep't. 2001) (the "Acquista Decision") which, as also discussed infra, clearly "regulates insurance."

The Verizon Defendants argue that Dov's third claim, which seeks consequential and

---

[7]The Verizon Defendants have not argued that ERISA's deemer clause excepts from exemption state claims against Verizon, although they proffer that "Verizon is not an insurance company" with respect to their argument in support of preemption (Def. Mem., p. 10). ERISA's deemer clause provides:

> Neither an employee benefit plan . . . nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance . . . for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies"

29 U.S.C. § 1144(b)(2)(B).

Nonetheless, the Verizon Defendants' potential advancement of an argument under ERISA's deemer clause would fail on their motion to dismiss, because to the extent or capacity that Verizon acts as an insurance company, receives money from insurance companies, or engages in the insurance business, generally, is unclear at this stage. As determined in Trapanatto v. Aetna Life Ins. Co.-Aetna Health Plans, where "there is no factual basis on which to properly gauge this [deemer clause] argument . . . invocation of the deemer clause is unpersuasive at this juncture." Trapanatto, 1996 WL 417519, at *8. Moreover, defendants' potential advancement of an argument under the deemer clause would necessarily relate solely to defendant-Verizon, as MetLife, Unum and the PGI clearly fall within the meaning of ERISA's savings clause, cutting against dismissal of defendants' third cause of action at least to MetLife, Unum, and/or the PGI. In any event, since the Verizon Defendants did not raise this issue in their moving papers, they cannot do so on reply.

10

compensatory damages caused by defendants' bad faith handling, denial and/or termination of his benefits under the PGI pursuant to New York state law (Dov's "State Claim"), should be dismissed as "clearly preempted by ERISA." (Def. Mem., pp.9-10). Although the Verizon Defendants correctly note that Dov's State Claim "relates to" his "employee benefit plan," which typically would fall under ERISA's broad preemptive sweep, the Verizon Defendants fail to conduct a full (really, any) preemption analysis. Dov's State Claim survives preemption under ERISA's savings clause, which exempts laws that "regulate insurance."

The ERISA preemption analysis "begin[s] with the assumption that 'Congress does not intent to supplant state law, a presumption that is particularly strong for 'state action in fields of traditional state regulation.'" Gerosa v. Savasta & Co., Inc., 329 F.3d 317, 323 (2d Cir. 2003); Metropolitan Life, 471 U.S. at 741 ("The presumption is against pre-emption, and we are not inclined to read limitations into federal statutes in order to enlarge their pre-emptive scope"). This is especially true with respect to laws that regulate insurance, which are expressly saved from preemption under ERISA's savings clause (see discussion supra).

Laws that "regulate insurance" are not limited to codified statutory law. "Decisional law that 'regulates insurance' may [also] fall under the saving clause. Pilot Life, 481 U.S. at 48 n.1 (citations omitted) ("The saving clause, § 514(b)(2)(A), covers 'any law of any State . . .[and] includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any state) (emphasis added); also see Unum Life Ins. Co. Of Am. v. Ward,

526 U.S. 358, 366-7 n.1 ("[c]ommon law rules developed by decisions of state courts are "State Law" under ERISA").

Courts evaluate whether a law "regulates insurance" by looking to "common sense and frequently, by also evaluating case law interpreting the phrase, 'business of insurance,' under the McCarran-Ferguson Act." Pilot Life, 481 U.S. at 48; Unum Life, 526 U.S. at 367-68. Both a common sense perspective and the analysis under McCarron-Ferguson firmly support the finding that Dov's second cause of action is not preempted.

First, the common sense analysis focuses on whether the law in question is specifically directed at the insurance industry or is one of general application. Pilot Life, 481 U.S. at 50; Unum Life, 526 U.S. at 368; Trapanatto v. Aetna Life Ins. Co., 1996 WL 417519, at *7 (S.D.N.Y.). Here, any reading of the Acquista decision reveals that it is clearly directed specifically at the insurance industry. The Acquista Decision precludes insurance companies (not businesses or individuals generally) from denying and/or terminating insurance benefits in bad faith. Acquista, 285 A.D.2d 73. In support of this proscription, the Court in Acquista focused upon the public policy imperatives of insurance law generally and over-arching relationship/dynamic between insureds and insurers specifically. Id. at 77-82.

Moreover, in justifying the need for the proscription against bad faith set forth in Acquista, the Court relied exclusively upon grounds specific to the insurance industry, stating:

> We consider the need for this form of damages to be apparent. The problem of dilatory tactics by insurance companies seeking to delay and avoid payment

of proper claims has apparently become widespread enough to prompt most
states to respond with some sort of remedy for aggrieved policyholders.

Acquista, 285 A.D.2d at 81. As set forth in the Amended Complaint, "from a common-sense

perspective," the Acquista Decision is aimed at, or specifically directed to the insurance

industry in New York and is integral to the relationship between insureds and insurers in

New York (Amended Complaint, ¶118) (emphasis added). Trapanatto, 1996 WL 417519,

at *1 (finding that from a common sense perspective, state statute that required insurers to

reimburse policy holders for certain costs of medical treatment for children was "aimed at"

the insurance industry) (emphasis added); Lewis v. Aetna U.S. Healthcare, Inc., 78 F. Supp.

2d 1202, 1213 (N.D. Okla. 1999) (finding that from a common sense perspective, state

statute was "specifically directed" at the insurance industry because it required insurers to

pay claims promptly and in good faith) (emphasis added); Selby v. Principal Mutual Life Ins.

Co., 2000 WL 178191, at *3 (S.D.N.Y. Feb. 16, 2000) (from a common sense perspective,

state statute was "specifically directed" at the insurance industry because it required insurers

to provide benefits in accordance with New York law).

The Verizon Defendants' comparison of this case to Pilot Life is inapposite, because

the "roots" of the Mississippi law prohibiting bad faith, which was preempted by ERISA in

that case, was "firmly planted in the general principles of Mississippi tort and contract law

[such that] any breach of contract, and not merely breach of an insurance contract, may lead

to [liability]." Pilot Life, 481 U.S. at 50 (emphasis added). The Acquista Decision, unlike

the Mississippi law in Pilot Life, " is a rule firmly applied to insurance contracts, not a

13

general principle guiding a court's discretion in a range of matters." <u>Unum</u>, 526 U.S. at 371. Accordingly, the <u>Acquista</u> Decision survives preemption under the "common sense" inquiry, because like the state laws in <u>Unum</u>, <u>Trapanatto</u>, <u>Lewis</u>, and <u>Selby</u>, it imposes industry-wide conditions on the <u>insurance</u> business, specifically.[8]

<u>Second</u>, as noted above, in determining whether a law "regulates insurance," courts interpret the phrase, 'business of insurance,' under the McCarran-Ferguson Act. This analysis includes consideration of three factors ("Factor(s)"): (1) whether the practice has the effect of transferring or spreading a policy holder's risk; (2) whether the practice is an integral part of the policy relationship between the insurer and the insured; and (3) whether the practice is limited to entities within the insurance industry." <u>Pilot Life</u>, 481 U.S. at 48-9; <u>MetLife</u>, 471 U.S. at 743. These Factors also support holding that the <u>Acquista</u> Decision is saved from preemption in this case.

The first Factor weighs against preemption because the <u>Acquista</u> Decision can easily be read to affect the transfer or spread of a policy holder's risk. Among the reasons consumers purchase insurance is to "protect himself/herself" against the risks of accidental losses and the mental stress which could result from such losses." <u>Lewis</u>, 78 F. Supp. 2d at 1212-13. And insurance companies are "well-aware" that consumers seek this "peace of mind." <u>Id</u>. Absent this "peace of mind," consumers would be unwilling to transfer or spread

---

[8]Upon establishing that the common sense analysis supports a finding that a state law claim is <u>not</u> preempted, no further analysis under the McCarron-Ferguson Act is required. <u>Trapanatto</u>, 1996 WL 417519 at *7. Nonetheless, we undertake the McCarron-Ferguson Act analysis as well, inasmuch as it, too, supports finding that Dov's claim is not preempted.

any risk to insurance companies.

The second Factor, which questions whether the practice is integral to the policy relationship between the insurers and insured, also tends towards holding that the Acquista Decision regulates insurance. In determining that consequential damages may be appropriate for "breach of the insurer's duty of good faith," the court in Acquista recognizes that "a fundamental injustice may result when a traditional contract analysis is applied to circumstances where insurance claims were denied despite the insurers' lack of a reasonable basis to deny them." Acquista, 285 A.D.2d at 78-80 (emphasis added). This basis for the Acquista Decision is plainly an integral part of the relationship between the insurer and policyholder, because it expressly distinguishes itself from application to contracting parties in general, and most importantly, "dictates the terms of the relationship between the insurer and insured." See Unum Life, 526 U.S. at 374; MetLife, 471 U.S. at 743.

The third Factor, whether the practice is limited to the insurance business, also supports holding that the Acquista Decision is exempted from preemption. As an initial matter, defendants make no effort to proffer any authority in which liability under the Acquista Decision has been applied outside the context of the insurance industry. See Lewis, 78 F. Supp. 2d at 1213 (recognizing lack of universal application weighs against preemption); Franklin H. Williams, 50 F.3d at 150-51 (recognizing that statutes which merely impact the insurance industry but that are based in contract or tort are often preempted). As explained above, the Acquista Decision "does not merely have an impact on the insurance

15

industry; it is aimed at it." See Unum, 526 U.S. at 375 (recognizing that the common sense

finding parallels the third McCarran-Ferguson Factor) (citations omitted) (emphasis added).

Accordingly, both common sense and the McCarran-Ferguson Factors dictate that the

Acquista Decision distinctively and exclusively regulates insurance, thereby exempting Dov's

State Claim from preemption under ERISA.

## II

### DOV'S FOURTH CAUSE OF ACTION STATES A CLAIM

Dov's fourth cause of action properly seeks de novo consideration of Verizon's De

Facto Rejection. First, defendants cite no authority for their naked proposition that "[the

fourth cause of action] is not a 'cause of action' under ERISA's civil enforcement provision,

ERISA 502(a), but simply an interpretation of the Plan's terms that would need to be

resolved as party of Count I as a matter of course" (Def. Mem., p.11). Moreover, allegations

regarding the appropriate standard of review properly withstand motions to dismiss. Nahoun

v. Employees' Pension Plan of Credit Suisse First Boston, 2005 WL 1476453, at *1

(S.D.N.Y. 2005); Erbe v. Billeter, 2007 WL 2905890, at *6 (W.D. Pa. 2007).

## III

### DEFENDANTS' FAILURE TO INCLUDE DOV IN THE PROPER PLAN AND MAINTAIN HIS PENSION BENEFITS CONSTITUTES BREACH OF A FIDUCIARY DUTY AND WARRANTS EQUITABLE RESTITUTION AMONG OTHER REMEDIES

Breach of a fiduciary duty is an actionable claim under ERISA, warranting equitable

relief. See e.g., Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 210 (2002);

16

Varity Corp. v. Howe, 516 U.S. 489, 507 (1996); Simeon v. The Mount Sinai Medical

Center, 150 F. Supp. 2d 598, 603 (S.D.N.Y. 2001).  Under ERISA, plan fiduciaries are

required to:

> discharge their duties with respect to a plan solely in the interest of the participants and beneficiaries and-
>
> (A) for the exclusive purpose of:
>
>> (i) providing benefits to participants and their beneficiaries; and
>> (ii) defraying reasonable expenses of administering the plan.

29 U.S.C. § 1104.  Accordingly, "to participate knowingly and significantly in deceiving a

plan's beneficiaries in order to save the employer money and the beneficiaries' expense is

not to act 'solely in the interest of the participants and beneficiaries . . .'" Varity Corp. v.

Howe, 516 U.S. 489, 507 (1996).

     ERISA further requires plan fiduciaries to furnish certain materials, particularly plan

summaries and descriptions, to participants or beneficiaries, using "measures reasonably

calculated to ensure actual receipt of the material." Simeon, 150 F. Supp.2d at 603

(defendants violated fiduciary duties by "failing to provide the plaintiff with required

information and misleading her such that she failed to enroll in the Plan and obtain its

benefits"), citing 29 U.S.C. § 1024(b);[9] also see, Swanson v. U.A. Local 13 Pension Plan, et

---

[9]To the extent that Dov did not assert a particular cause of action pursuant to ERISA § 1024(b), this court should infer such a claim based on the facts asserted and conform the pleadings accordingly. "[This] approach is consistent with the Second Circuit's holding that a pleading is sufficient where it sets forth the factual allegations supporting the elements of a claim, even if it fails to identify the specific law under which it brings a claim." Harrison v. Metropolitan Life Ins. Co., 417 F. Supp. 2d, 424, 434 (2d Cir. 2006), citing Marbury Mgmt., Inc. v. Kohn, 629 F.2d 705, 712 n. 4 (2d Cir.1980).

al., 779 F. Supp. 690, 700 (W.D.N.Y. 1991) (suggesting that misinforming or misleading plan participants may give rise to breach of fiduciary duty under ERISA to correctly and adequately inform participants about their rights and obligations); Chambless v. Masters, Mates & Pilots Pension Plan, 602 F. Supp. 904, 910-11 (S.D.N.Y. 1984) (finding trustees' failure to fully disclose plan amendment, which resulted in forfeiture and/or reduction of accrued and vested pension benefits constituted breach of a fiduciary duty).

The Verizon Defendants reject Dov's claim for "equitable restitution" as legal and not equitable in nature, and thus, duplicative of Dov's claim for damages asserted in Dov's first cause of action, (which is not at issue on this motion) (Def. Mem., pp.3-6). In doing so, the Verizon Defendants parochially assert that money damages are rarely, if ever, awarded as "other equitable relief" under ERISA (Id.). Contrary to the Verizon Defendants' assertions, "[e]quity sometimes awards monetary relief, or the equivalent, and restitution is both a legal and an equitable remedy that is monetary yet is distinct from damages." Clair v. Harris Trust & Savs. Bank, 190 F.3d 495, 498-99 (7th Cir. 1999) (emphasis added). In Great-West, for example, the Supreme Court confirmed that "whether [restitution] is legal or equitable depends on the basis for the plaintiff's claim and the nature of the underlying remedies sought." Great-West, 534 U.S. at 210. In recognizing that monetary equitable relief may be appropriate under ERISA, Great-West provides that "equitable relief must mean something

---

18

less than all relief," and defines "equitable restitution" as a "constructive trust or equitable

lien, where money or property identified as belonging in good conscience to the plaintiff

could clearly be traced to particular funds or property in the defendant's possession." Id. at

213 (citations omitted).

The courts have declined to dismiss claims that request monetary relief for breach of

fiduciary duty as an equitable remedy under ERISA, where the relief requested falls outside

of ERISA's specific remedy provisions. E.g., Simeon, 150 F. SUPP. 2d at 603 (recognizing

that plaintiff's claim for employer's contribution to her plan due to defendants' failure to

disclose information properly under ERISA constitutes "other equitable relief" and "not

precluded by ERISA's specific remedy provisions"). Also see, Great-West, 534 U.S. at 211

(recognizing that specific performance "to enforce an obligor's duty to make future monthly

payments, after the obligor had consistently refused to make past payments concededly due,"

is "other equitable relief" available under ERISA); Dunnigan v. Metropolitan Life Ins. Co.,

277 F.3d 223, 229 (2d Cir. 2002) (recognizing that a monetary award of interest on late

payments of benefits is recoverable as "other equitable relief" under ERISA). This is

precisely the type of relief Dov seeks in this case.

As reflected in the Amended Complaint, Dov seeks equitable restitution of specific

pension funds that should have, but apparently did not accrue in his favor following his

wrongful termination, as a result of defendants' breach of fiduciary duties (Amended

Complaint ¶110). As reflected above, defendants ignored their fiduciary obligations under

ERISA. First, defendants failed to apprise Dov of the October 2001 Transfer Option, which resulted in, inter alia, Dov's wrongful termination and defendants' improper retention of pension funds that should have accrued in Dov's favor. Moreover, Dov remains in the dark with respect to which plan governs his benefits. The record aptly demonstrates that defendants sent Dov contradictory, confusing, and misleading communications, which ultimately misinformed Dov regarding the status of his disability benefits and his entitlement thereto. See discussion supra, regarding the discrepancies among Dov's benefits under the Verizon Directive, the Verizon Confirmation, the Legacy Plan, Unum's July 14 Letter, and Verizon's August 3rd Letter. Defendants' conduct is so egregious and inexcusable, and suggestive of some ulterior, self-serving motive that it is aside from and in breach of their "exclusive," fiduciary obligations under ERISA (Amended Complaint, ¶96).

In seeking to dismiss Dov's second cause of action, the Verizon Defendants further allege that Dov failed to request "appropriate" equitable relief under ERISA (Def. Mem., p.8). Defendants are wrong -- Dov's claim to equitable relief under § 503(a)(3) is "appropriate," because ERISA may not provide adequate relief elsewhere, (such as in § 502(a)(1)(B), as plaintiffs incorrectly assert). The situation in this case is directly analogous to this Court's decision in Simeon, 150 F. Supp. 2d 598. In Simeon, an employee sought equitable relief under ERISA § 503(a)(3) to remedy her employer's breach of fiduciary duty, for "failing to advise her in her right to enroll in the Plan and by failing to facilitate her enrollment in the plan." Simeon, 150 F. Supp. at 601-602. Like the defendants in Simeon,

20

defendants in the case at bar failed to demonstrate that the ERISA plan administrators gave Dov adequate notice of the existence of the Plan and the benefits to which he would be entitled. Id. at 603. The Simeon court denied the defendants' motion to dismiss therein, and stressed that there may be no specific provision providing specific relief for a violation of this duty. Id.; also see, Varity Corp., 516 U.S. at 515 (recognizing that plaintiffs are entitled to "other equitable relief" where ERISA otherwise may not provide a remedy). Dov is entitled to the same consideration here. While ERISA may provide the appropriate vehicle to redress Dov's claim for back payment of benefits wrongfully withheld, as Dov asserts in his first cause of action, only ERISA's provision providing for "other equitable relief" can certainly and appropriately restore Dov's pension benefits. Accordingly, Dov's second cause of action should not be dismissed.

## IV

## DOV IS ENTITLED TO A JURY TRIAL

The Verizon Defendants also seek to strike Dov's request for a jury trial. Relying on, inter alia, Sullivan v. LTV Aerospace & Def. Co., 82 F.3d 1251, 1257-59 (2d Cir. 1996), the Verizon Defendants baldly assert that Dov is not entitled to a jury trial because the "Second Circuit has held on numerous occasions that there is no right to a jury trial under ERISA" (Def. Mem., p.11). As discussed infra, the Verizon Defendants are wrong because Dov's claims arise under ERISA and independent state grounds.

21

Although jury trials may be inappropriate in most cases[10] arising under ERISA, Dov is entitled to a jury on his State Claim. See, e.g., McCauley v. First Unum Life Ins. Co., 1998 WL 846121, at *5 (S.D.N.Y.) (recognizing that where a "common law claim is still at stake [the plaintiff's] right to a jury trial remains intact"); Smith v. Rochester Tel. Bus. Marketing Corp., 786 F. Supp. 293, 310 (W.D.N.Y. 1992) (refusing to strike jury demand in case involving ERISA where state law claims were implicated). Accordingly, the Verizon Defendants' motion to strike Dov's jury demand should be denied.

## V

### TO THE EXTENT THAT THE COURT IS DISPOSED TO FIND THAT TECHNICAL DEFICIENCIES RENDER DOV'S CLAIMS FACIALLY DEFICIENT, DOV IS ENTITLED TO REPLEAD

To the extent that the Court agrees with the Verizon Defendants and it is determined that Dov's allegations fail to state a proper cause of action under ERISA or state law, Dov is entitled to seek leave to replead. See e.g., Carpenters' Local Union No. 964 Pension Fund

---

[10]It is worth noting that the Verizon Defendants' outdated, bare allegation under Sullivan grossly misstates the applicable law. In fact, the Southern District recognizes that the Seventh Amendment entitles a litigant to a jury trial on ERISA claims that are "legal" in nature. See e.g., Bona v. Barash, 2003 WL 1395932, at *33 (S.D.N.Y.) (affording plaintiffs-ERISA plan beneficiaries a jury trial for legal damages resulting from trustees' mismanagement of plaintiffs' funds). "The foundation supporting the rationale of the Court in Sullivan, has . . . been mortally eroded by [the Supreme Court's decision in] Great West." Evan S. Schwartz & Michail Z. Hack, Supreme Court Ruling Undermines Jury Trial Ban, N.Y.L.J., June 15, 2006, at 5, (col. 1). And following Great-West, the court in Design Strategies noted that "at least two circuits, and some in this [Southern] District, have stated that 'when a breach of fiduciary duty claim is predicated upon underlying conduct 'which is actionable in a direct suit at common law,' the jury should decide whether there has been a breach of fiduciary duty . . . conduct that breaches a fiduciary duty might also violate other legal rules; it might constitute a tort (such as fraud) or breach of contract." Design Strategies, Inc. v. Davis, 367 F. Supp. 2d 630, 638 (S.D.N.Y. 2005), citing Page Mill Asset Mgmt. v. Credit Suisse First Boston Corp., 2001 WL 863552, *4 (S.D.N.Y.), DePinto v. Provident Sec. Life Ins. Co., 323 F.2d 826, 837 (9th Cir. 1963); Halladay v. Verschoor, 381 F.2d 100, 109 (8th Cir. 1967); In Re Evangelist, 760 F.2d 27, 31 (1st Cir. 1985) (internal citations omitted)).

v. Silverman, 1995 WL 378539, at *1 (S.D.N.Y. 1995) (acknowledging that plaintiff properly replead ERISA claims following dismissal without prejudice, of claims arising under ERISA that initially failed to state a cause of action).  See also, RBS Holdings, Inc. v. Wells Fargo Century, Inc., 485 F. Supp. 2d 472, 480 (S.D.N.Y. 2007) (permitting plaintiffs to replead and cure deficiencies upon dismissal for failure to state a cause of action).

## CONCLUSION

For all of the foregoing reasons, Dov is entitled to denial of the Verizon Defendants' motion in all respects.

Dated:      New York, New York
            October 31, 2007

                                    **WEISS & HILLER, PC**
                                    Attorneys for Plaintiff, Dov Fershtadt
                                    600 Madison Avenue
                                    New York, NY 10022
                                    (212) 319-4000

                            By: _____
                                    Michael S. Hiller (MH 9871)


On brief:  Lauren Rudick, Esq.

23