UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x
DOV FERSHTADT,

                Plaintiff,

- against -                            07 Civ. 6963 (CM)

VERIZON COMMUNICATIONS INC., THE
PLAN FOR GROUP INSURANCE,
METROPOLITAN LIFE INSURANCE
COMPANY, and UNUM LIFE INSURANCE
COMPANY OF AMERICA,

                Defendants.

-----------------------------------------------------------x



## DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

McMahon, J.:

I.    Introduction

This case involves a series of alleged machinations by Defendant Verizon Communications, Inc., its employee benefit plan, and the administrators of that plan, resulting in the underpayment of disability benefits to the plaintiff, Dov Fershtadt. Fershtadt requests relief under various provisions of the Employee Retirement Income and Security Act (ERISA) 29 U.S.C. § 1001 et seq., and under New York contract law. Defendants have moved to dismiss all but one of Fershtadt's claims.

The motion is granted, and Counts II-IV of the Complaint are dismissed. We will proceed to litigate Count I.

1

II. Background

    a. <u>Parties and Plaintiff's disability</u>

In 1982 Plaintiff Dov Fershtadt became an employee of Defendant Verizon. Pl.'s Opp. at 2. Defendant The Plan for Group Insurance (PGI or Plan) is an employee benefit plan governed by ERISA, and Plaintiff is a participant and beneficiary under the Plan. Compl. ¶¶ 4-5. Defendants Metropolitan Life Insurance Company and UNUM Life Insurance Company of America are administrators, trustees and fiduciaries of the Plan. Id. ¶¶ 7-9, 12. Plaintiff also alleges that Defendant Verizon is an administrator, trustee and fiduciary of the Plan. Id. ¶ 10.

On September 11, 2001, Plaintiff was working for Verizon at the World Trade Centers, in Tower 2. Id. ¶ 16. When American Airlines Flight 11 struck Tower 1, Plaintiff fled into the plaza, where he dodged falling airplane parts and human remains. Id. ¶ 23. Plaintiff returned to Tower 2 for shelter, but shortly after his return it was struck by United Airlines Flight 175. Id. 24-26. He once again evacuated Tower 2. Id. ¶ 27. Plaintiff survived the attacks, but soon began experiencing severe depression, dementia and post-traumatic stress disorder. Id. ¶ 29.

    b. <u>Fershtadt's coverage and benefits</u>

At the time of the attacks, Fershtadt was covered by a disability plan that he refers to in his brief as the Bell Atlantic Plan. Pl.'s Opp. at 3. The Bell Atlantic Plan included the following terms: (1) disability benefits were payable to Fershtadt at 50% of his pre-disability earnings, fully taxable, and subject to a $420,000 life-time cap; (2) if Fershtadt remained disabled for more than one year, his employment could be terminated and he would not continue to accrue pension benefits. Id.

2

Verizon and UNUM (its administrator at the time), initially approved short-term, and later long-term, disability benefits for Fershtadt. Id. However, Fershtadt alleges that Verizon and UNUM consistently misidentified the plan applicable to Fershtadt, mixing and matching various plans depending on which plan provisions were least favorable to Fershtadt. Id.

In October of 2001, other Verizon employees who were members of the Bell Atlantic Plan were given the option to change their benefit levels from those offered under the Bell Atlantic Plan to those offered under the new Plan for Group Insurance (PGI). Id. at 4. Fershtadt alleges that he was never notified of this offer, and so did not exercise this option. Id.

During 2004 Verizon issued a Summary Plan description (2004 SPD) in connection with the PGI. Id. The 2004 SPD contained a provision limiting persons who became disabled as a result of a "mental-nervous condition" to 24 months of disability insurance benefits. . Disability benefits under the PGI would be non-taxable, but capped at a $8,333 per month. In the event of disability exceeding one year a member would not necessarily be terminated and would continue to accrue pension benefits. Id. at 5. The 2004 SPD also contained a clause stating that any Verizon employees who did not accept the October 2001 transfer option (described above) would continue to receive whatever benefit levels to which they were entitled under the Bell Atlantic Plan.

In October 2004, Verizon directed Fershtadt to enroll in the PGI and select various benefit levels and taxability options that were being made available under a new 2005 SPD. Pursuant to this directive, Fershtadt selected benefits at a level of 66% of his pre-disability earnings, non-taxable, capped at $11,333 per month. Thereafter, Verizon provided multiple confirmations to Fershtadt that he would be paid his long-term disability at these levels. Id.

3

Relying on these representations, Fershtadt paid the premiums for this level of disability benefits. Id.

During this time, Fershtadt claims that he had been receiving short-term disability benefits. Id. at 6. On July 14, 2005, Fershtadt received a letter from defendant UMUM indicating that he would begin receiving long term disability benefits under yet another plan, called the Legacy Plan, which according to Verizon and UNUM, entitled Fershtadt to 50% of his earnings, fully taxable, rather than tax free benefits at 66% of his previous earnings. Id. Fershtadt claims never to have received a copy of the Legacy Plan and to be unfamiliar with its contents. Id. Two weeks later, on August 3, 2005, Verizon sent Fershtadt a letter contradicting the UNUM letter and confirming that he was entitled to long-term benefits at the 66%, non-taxable rates. Id. Throughout this period, Fershtadt remained a Verizon employee, albeit out on disability leave. But only "days later"—i.e., almost immediately after had Verizon confirmed that Fershtadt's long term disability would be calculated pursuant to the 2005 SPD—Verizon terminated Fershtadt's employment, apparently under the belief that he was still covered by the Bell Atlantic Plan (and hence subject to termination after one year of disability), rather than the 2005 SPD for the PGI (which contains no such termination clause). Id. Upon his termination, Fershtadt stopped accruing pension benefits, and began receiving long term disability benefits at 50%, fully taxable, subject to a $420,000 cap—i.e., under the terms of the Bell Atlantic Plan. Id.

In August of 2006, Verizon and UNUM terminated Fershtadt's long term disability benefits altogether, this time citing the 2004 SPD for the PGI, which contained a 24 month limitation for mental-nervous disabilities—despite the fact that Fershtadt had not selected PGI coverage until the 2005 SPD was in effect, and been terminated pursuant to a provision of the Bell Atlantic Plan. Id. at 7.

4

In September of 2006 Fershtadt successfully appealed the termination of his long-term disability benefits. However, at that time it was determined that Fershtadt was entitled to long term benefits based on the $8,333 cap contained in the 2004 SPD, rather than the $11,000 cap in the 2005 SPD. Verizon and its new administrator, Met Life, also concluded that these benefits were fully taxable, despite the fact that the 2004 SPD states that benefits paid thereunder are not taxable. Thus, Fershtadt concludes that defendants were administering his long-term disability benefits as if he were covered by the provisions least favorable to him under at least two, and probably three, different plans. Id.

Fershtadt appealed this determination of his benefit levels in April 2007, demanding that he be paid long-term disability benefits at the levels stated in the 2005 SPD for the PGI. Id. at 7-8. After Verizon and its new Plan administrator, Met Life, took no action on his appeal, he filed the instant action on September 24, 2007, alleging that Defendants' inaction amounted to "de facto rejection" under the Plan. Shortly thereafter, Verizon and Met Life purported to grant Fershtadt's appeal in part, determining that he was entitled to benefits under the Bell Atlantic terms (50% of his previous earnings, subject to a $420,000 cap, fully taxable). Id. at 8. Fershtadt maintains that he is entitled to benefits under the 2005 SPD for the PGI, namely 66% of his previous earnings, non-taxable. Compl. ¶ 104.

c. Procedural history

In Count I of his complaint, Fershtadt requests, inter alia, that (1) the court declare that defendants must provide him benefits pursuant to the 2005 SPD, and (2) the court direct defendants to "make equitable restitution with respect to, and/or otherwise make payment of, all back benefits" from the date on which Fershtadt claims defendants began underpaying his

5

benefits, and "restore all pensions benefits properly accrued since wrongful termination of [his] employment." Id. ¶ 108.

In Count II, Fershtadt alleges that the defendants have breached their fiduciary duties by refusing to pay Fershtadt the proper amount of benefits in violation of the ERISA statute, placing their own financial interests ahead of his. Id. ¶ 111. For relief Fershtadt requests an order that defendants "provide him with equitable restitution of pension funds or any other funds that are in defendant's possession, to which Fershtadt is the rightful owner." Id. ¶ 122.

In Count III, Fershtadt alleges that defendants are liable for consequential damages, including emotional distress damages, arising from their bad faith handling of his benefits. Id. ¶¶ 113-18. In support, Fershtadt relies on a New York case which holds than an insurer may be liable for consequential damages when it breaches a contract in bad faith. Id. Under this Count Fershtadt requests money damages in an amount exceeding $500,000. Id.

In Count IV, Fershtadt requests that I review the de facto administrative denial of his various claims under the Plan under a de novo standard. Id. ¶¶ 119-121. Fershtadt asserts that Count IV is not a claim separate and independent of his ERISA claims; rather, he merely seeks this standard of review to guide adjudication of his ERISA claims. Id. ¶ 121 n.4.

Defendants Verizon and the Plan have moved to dismiss Counts II-IV of the Complaint. Verizon argues that the remedy sought under Count II is not equitable and not appropriate as required by § 502(a)(3), due to the fact that it is duplicative of the statutorily specified legal damages requested under Count I. Def.'s Mem. at 3-9. Defendants argue that Count III fails to state a claim because the state law on which it is based is preempted by ERISA. Id. at 9-11. As to Count IV, Defendant points out it does not articulate an additional ground for liability, and does not make any independent request for relief. Id. at 11. Finally, Verizon requests that plaintiff's

6

jury demand be stricken. Id. After briefing on this motion was completed, Defendant Met Life filed a Notice of Joinder in Verizon's motion to dismiss.

For the reasons stated below, Defendants' motion is granted.

III. Discussion

a. Standard

On a motion to dismiss, the court must accept all factual allegations in the Complaint as true. In re Xethanol Corp. Sec. Litig., 2007 WL 2572088, at *2 (S.D.N.Y. Sept. 7, 2007) (citing Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S. Ct. 2499 (2007)). The Conley v. Gibson standard, which held that dismissal is inappropriate "unless it appears beyond a doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief," 355 U.S. 41, 45-46 (1957), was recently "retired" by the United States Supreme Court in Bell Atlantic v. Twombly, 127 S. Ct. 1955, 1964-65 (2007). The Bell Court held that, "While a Complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiffs obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 1964-65 (internal citations and quotations omitted). For a plaintiff to survive a motion to dismiss, his, "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the Complaint are true (even if doubtful in fact)." Id. at 1965 (citations omitted).

In a post-Bell decision, the United States Court of Appeals for the Second Circuit, interpreting Bell, stated, "[T]he [Supreme] Court is not requiring a universal standard of heightened fact pleading, but is instead requiring a flexible 'plausibility standard,' which obliges

7

a pleader to amplify a claim with some factual allegation in those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007) (emphasis in original).

With this standard in mind, I address Counts II-IV of the Complaint in turn.

### b. Count II

In Count II Fershtadt alleges that the defendants breached their fiduciary duty to him as a member of an ERISA plan when they mishandled his disability benefits. For relief, Fershtadt requests what he terms "equitable restitution of pension funds and other funds that are in defendants' possession, [of] which Fershtadt is the rightful owner." Compl. ¶ 112. In their motion papers the parties agree that Fershtadt is requesting "appropriate equitable relief" under section 502(a)(3) for defendants' alleged breach of fiduciary duty.

#### i. Appropriate equitable relief

Section 502(a)(3) is part of ERISA's civil enforcement provision. It allows a civil suit

> by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

29 U.S.C. § 1132(a)(3) (emphasis added). In order to obtain a remedy under § 502(a)(3), a plaintiff must first show that that the requested relief is "equitable." Relief under § 502(a)(3) is equitable when it is among "those categories of relief that were typically available in equity..." Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 210 (2002) (internal citations and quotations omitted). An example of equitable relief in this context might be an injunction enjoining an insurer from denying payment of future recurring claims. Although restitution was

8

typically available in the era of the divided bench, the Supreme Court has expressed its disapproval for suits under § 502(a)(3) that seek any monetary remedy, by making a highly formalistic distinction between "equitable restitution" and "legal restitution." See id. at 212-19.

In order for equitable relief to be available under § 502(a)(3), it must also "appropriate." Varity Corp. v. Howe, 516 U.S. 489 (1996). Equitable relief is only appropriate when such relief is not available under other ERISA provisions. Frommert v. Conkright, 433 F.3d 254, 270 (2d Cir. 2006) ("[T]he Supreme Court . . . has consistently disfavored the expansion of the availability of equitable relief where remedies at law are sufficient.") (citing Varity, 516 U.S. at 512).

In Varity, the Supreme Court held that the equitable relief provision in § 502(a)(3) acts as "safety net, offering appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere adequately remedy," 516 U.S. at 512, reasoning, on the basis of Congressional intent, that, when a plan beneficiary has "adequate" relief in positive ERISA provisions, "there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'" Id. at 515 (internal citations and quotations omitted).

ii. Plaintiff's requested equitable remedy is not "appropriate"

Plaintiff's claim under Count II is duplicative of his claim under Count I. In both, he alleges that defendants' behavior in relation to his disability and pension benefits was carried out in bad faith, and in contravention of the plan, ERISA, and the defendants' duties as fiduciaries. In both Counts he asks the court to grant the "equitable restitution" of those benefits. There is no need to examine whether or not the pension benefits allegedly owed Plaintiff would constitute equitable relief, because the Complaint itself makes clear that payment of benefits owed is

9

already sought under § 502(a)(1)(B). Defendants do not contest that Plaintiff can pursue these past due benefits under Count I. Finally, the Second Circuit has noted that "the relief plaintiff's seek, recalculation of their [pension] benefits consistent with the terms of the Plan, falls comfortably within the scope of 502(a)(1)(B)." Frommert, 433 F.3d at 270.

Because the requested relief for Count I is already available (and being pursued) under Count I, it is not "appropriate" relief under § 503(a). It is unnecessary to go further to decide this claim. Nonetheless, I note that I would be compelled to hold that, much like the plaintiffs in Nechis v. Oxford Health Plans, Inc., 421 F.3d 96 (2d Cir. 2005), Plaintiff has failed to adequately request "equitable relief" within the narrow meaning that term has been given by the Supreme Court in Great-West and Sereboff v. Mid Atlantic Medical Services, Inc., 547 U.S. 356 (2006). Thus, Count II fails as a matter of law.

Because the failure of this Count is based on the form of relief requested, rather than whether or not the conduct alleged is actionable, it is infirm as to all named defendants, despite the fact that only Verizon and the Plan have moved to dismiss this Count. Count II is therefore dismissed as to all Defendants. However, because there may be other appropriate equitable relief available to Plaintiff on the basis of the conduct alleged in Count II, it is denied without prejudice to replead.

c. Count III

Defendants next argue that Count III—in which Plaintiff seeks damages under New York state law for Defendants' the failure to properly pay pension benefits—is preempted by ERISA. They are correct.

Fershtadt seeks consequential damages under New York law for Defendants' alleged bad faith breach of an insurance contract. Plaintiff cites one case in support of the availability of such a remedy, Acquista v. New York Life Insurance Co., 285 A.D.2d 73 (1st Dep't 2001), the central holding of which was adopted by the New York Court of Appeals just two months ago in Bi-Economy Market, Inc. v. Harleyville Insurance Co. of New York, --- N.E.2d ---, 2008 WL 423451 (N.Y. 2008). The Court notes that the insurance contracts in these cases did not "relate to" employee benefit plans.

It is conceded that the contract at issue in this case does "relate to" an employee benefit plan. Therefore, application of the Bi-Economy rule to the facts at bar is forbidden by the preemptive sweep of § 514(a), 29 U.S.C. § 1144(a) ("Except as provided in subsection (b) of this section [the savings clause], the provisions of this subchapter and subchapter III of this chapter shall supercede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan."), unless the legal principle in Bi-Economy "regulates insurance" and so falls within the clause "saving" such laws from preemption, § 514(b). 29 U.S.C. 1144(b) ("Nothing in this subchapter shall be construed to exempt or relieve any person from any law of any state which regulates insurance..."). A law that "regulates insurance" must be specifically directed at the insurance industry. See Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41 (1987).

The Bi-Economy rule is not a law that "regulates insurance." Bi-Economy held that, as a general rule of contract law, reasonably foreseeable consequential damages are available in certain circumstances, and that this general rule of contract law applies to any contract to pay a sum of money—including an insurance contract. Bi-Economy, 2008 WL 423451 (stating general principles of contract law, and holding that the distinction between contracts to do some act (for

11

which consequential damages are concededly available), and contracts to pay money (for which such damages are supposedly not available), is a "distinction . . . without basis.").

As the Bi-Economy rule of law is not directed at the insurance industry, it does not "regulate insurance" for the purposes of § 514(b). The case is entirely on point with Pilot Life, 481 U.S. 41, where the Supreme Court held that a general principle of Mississippi contract law did not "regulate insurance" for purposes of the savings clause.

Because the rule on which Plaintiff seeks to rely "relates to" an employee benefit plan, it is preempted. Because it does not "regulate insurance," it is not saved from express preemption. Therefore, Count III must be dismissed as to all Defendants, with prejudice.

### d. Count IV

Finally, in Count IV Plaintiff merely suggests a standard of review for application to his ERISA claims in Count I. Count IV fails to state a cause of action or request a remedy. It is therefore dismissed.

### e. Jury demand

Plaintiff concedes that there is no right to a jury trial under ERISA. Muller v. First Unum Life Ins. Co., 341 F.3d 119, 124 (2d Cir. 2003) ("There is no right to a jury trial under ERISA") (citing Sullivan v. LTV Aerospace and Def. Co., 82 F.3d 1251, 1257-59 (2d Cir. 1996)). Plaintiff nonetheless believes he is entitled to a jury trial to determine his state law claims for breach of contract.

In light of my decision to dismiss the state causes of action as preempted, there is no basis for a jury trial in this case. As a result, Defendant's request to strike Plaintiff's demand for a jury trial is granted.

IV.  Conclusion

Count II of the Complaint is hereby dismissed, without prejudice, as to all Defendants. Count III of the Complaint is hereby dismissed, with prejudice, as to all Defendants. Count IV, insofar as it purports to state a cause of action, is dismissed. Finally, Plaintiff's demand for a jury trial is stricken.

It is so ordered.

Dated: April 24, 2008

_____
U.S.D.J.

13